IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Wendell Wilkins, ) | |
| ) | Civil Action No. 6:12-cv-1592-MGL-KFM |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Dwayne Brown, Lt. Martain, and ) | |
| Lt. Braboy, ) | |
| ) | |
| Defendants. ) | |

       This matter is before the court on the defendants' motion for summary judgment. The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

       The defendants filed a motion for summary judgment on October 29, 2012. On October 30, 2012, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. The plaintiff filed his response on November 9, 2012. The defendants filed a reply on November 19, 2012, and the plaintiff filed a sur-reply on November 29, 2012.

## FACTS PRESENTED

       The plaintiff was at the time of the incident in question an inmate in the Special Management Unit ("SMU") at Evans Correctional Institution, which is part of the South Carolina Department of Corrections ("SCDC"). The plaintiff alleges that on April 18, 2012, while his cell was being searched, he was subjected to unnecessary and excessive

force by the three defendants. The defendants deny the accusation and assert that while the plaintiff was strip searched, no force was necessary as the search took place without incident. The plaintiff also alleges that the defendants were deliberately indifferent to his serious medical needs following the incident.

On May 2, 2012, the plaintiff filed a Step 1 grievance regarding the incident in question. Due to the nature of his allegations, the grievance was forwarded by the Institutional Grievance Coordinator to the Inmate Grievance Branch on May 21, 2012, for possible review by the Division of Investigation ("DOI"). The response to the grievance notes that the time limits set out in SCDC Policy GA-01.12 for responses to grievances are not applied to grievances sent to DOI. The time frame for responses begins once the grievance returns from DOI (doc. 51-5 at p. 2). The plaintiff filed his complaint on June 14, 2012.

The Warden responded to the plaintiff's grievance on July 17, 2012, noting that DOI had returned the grievance stating that no evidence had been presented to substantiate the plaintiff's allegations against staff. The plaintiff was advised that he had five days from receipt of the Warden's response to submit a Step 2 grievance. The plaintiff filed his Step 2 grievance on July 23, 2012. As the plaintiff had already filed a lawsuit, the grievance was administratively closed on August 27, 2012 (doc. 59-14 at p. 5).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a

reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

The defendants first[1] argue that the complaint should be dismissed because the plaintiff failed to exhaust his administrative remedies prior to filing the instant lawsuit. This court agrees. The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that prisoners exhaust their administrative remedies prior to filing civil actions concerning prison conditions under Section 1983 or any other federal law. *See Jones v.*

---

[1] As the undersigned recommends that the complaint be dismissed *without prejudice* for failure to exhaust, the defendants' remaining arguments will not be addressed.

*Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").  "[T]he PLRA's exhaustion requirement is mandatory," *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).  Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants. *Jones*, 549 U.S. at 216; *Anderson*, 407 F.3d at 681.

The PLRA requires "proper exhaustion" of available administrative remedies prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006).  As the Supreme Court noted, "[a]ggrieved parties may prefer not to exhaust administrative remedies for a variety of reasons," whether it be concerns about efficiency or "bad faith." *Id.* at 89-90.  This is especially true in a prison context. *Id.* at 90 n.1.  Nevertheless, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

In *Moore v. Bennette*, 517 F.3d 717 (4th Cir. 2008), the Fourth Circuit explained that "[u]nder the [PLRA], prisoners must exhaust 'such administrative remedies as are available' *prior to filing suit in federal court* challenging prison conditions." 517 F.3d at 725 (emphasis added) (quoting 42 U.S.C. § 1997e(a)).  The reason that the administrative remedies must be exhausted prior to the filing of a civil action, as opposed to after or contemporaneous therewith, was explained by the Supreme Court in *Porter*, in which the Court stated:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action

> taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

534 U.S. at 524–25. Moreover, a prisoner may not comply with the mandatory exhaustion requirements by exhausting his remedies during the course of litigation. *Cambron v. Harris*, C.A. No. 3:11-326-RMG-JRM, 2012 WL 1579580, at *3 (D.S.C. April 11, 2012), *adopted by* 2012 WL 1579497 (D.S.C. May 4, 2012).

The plaintiff filed the instant lawsuit just 43 days after filing his Step 1 grievance and just 24 days after the matter was forwarded to the Inmate Grievance Branch for review by the DOI. "[An] SCDC prisoner must wait approximately 114 days from presenting his Step 1 Grievance to the prison to file a complaint in federal court." *Malik v. Ward*, 8:08-cv-1886-RBH, 2010 WL 936777, at *3 (D.S.C. March 16, 2010).[2] Here, the plaintiff did not wait

---

[2] "The court may take judicial notice of the SCDC grievance process, specifically, SCDC Policy GA-01.12." *Malik*, 2010 WL 936777, at *2 n.4.

> As noted in *Jones v. Kay*, No. 07-3480, 2007 WL 4292416 (D.S.C. Dec. 5, 2007), the time limits of this policy are summarized as follows:
>
>> (1) an inmate must fill out a Form 10-5 (Step 1 Grievance) to explain his complaint and give the form to an employee designated by the Warden within fifteen (15) days of the alleged incident;
>>
>> (2) the Warden designee has nine (9) working days from the time the grievance is presented to put it into SCDC's automated system;
>>
>> (3) the Warden should respond to the grievant in writing within forty (40) days;
>>
>> (4) the inmate may appeal by completing a Form 10-5a (Step 2 Appeal) and submitting it to the Inmate Grievance Coordinator within five (5) calendar days of receipt of the response; and
>>
>> (5) a responsible SCDC official will have sixty (60)

5

for the requisite time period to run prior to filing this action in federal court. The plaintiff did not wait for the DOI investigation to be completed and the Warden's response to his grievance, and he did not file a Step 2 grievance prior to filing this action. As such, the case should be dismissed as the plaintiff failed to properly exhaust his administrative remedies.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment (doc. 51) be granted and the plaintiff's complaint be dismissed *without prejudice* for failure to exhaust administrative remedies.[3] Further, the Clerk of Court is directed to amend the caption to reflect the proper spelling of the names of defendants Martin and Brayboy (*see* docs. 51-3, 51-4).

s/ Kevin F. McDonald
United States Magistrate Judge

March 14, 2013
Greenville, South Carolina

---

    days to respond to the Step 2 Grievance plus five (5)
    days for the grievant to be served.

    *See* SCDC Policy GA-01.12 (Inmate Grievance System). The decision of the "responsible official" who answers the Step 2 appeal is the Department's final response in the matter. *Id.*

*Id.* (quoting *Jones*, 2007 WL 4292416, at *5).

[3]Should the District Court disagree with the recommendation to dismiss the complaint *without prejudice* for failure to exhaust administrative remedies, the undersigned recommends that the defendants be given the opportunity to file a supplemental memorandum in support of summary judgment to address all of the plaintiff's allegations, including the deliberate indifference to serious medical needs claim, which was not addressed in their initial memorandum.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).